**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS**

| | |
|---|---|
| **Koko Katanjian,**<br><br>                    Plaintiff,<br><br>v.<br><br>**Ford Motor Company,**<br><br>                    Defendant. | Case No. 4:22-cv-38<br><br>Complaint and Demand for Jury Trial |

## COMPLAINT

**Koko Katanjian** ("Plaintiff"), by and through his attorneys, **Kimmel & Silverman, P.C.**, alleges the following against **Ford Motor Company** ("Defendant"):

## INTRODUCTION

1.      Plaintiff's Complaint is based on the Magnuson-Moss Warranty Act ("Warranty Act"), Chapter 15 U.S.C.A., § 2301, *et. seq.*, breach of implied warranty of merchantability pursuant to the Magnuson-Moss Warranty Act, and Tex. Bus. & Com. Code §§ 2.313, 2.314.

## JURISDICTION AND VENUE

2.      This Court has federal question jurisdiction over this matter pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1)(B), in that the Plaintiff claims more than $50,000.00 in damages, exclusive of interest and costs, and under the doctrine of supplemental jurisdiction as set forth in 28 U.S.C. § 1367.

3.      This Court has personal jurisdiction over Defendant who conducts business in the State of Texas.

4.      Venue is proper in this district under 28 U.S.C. §1391(b) because Plaintiff purchased the subject vehicle in Denton County; a substantial part of the events giving rise to the

1

Plaintiff's claims occurred within this District; this District is where Defendant directs and controls warranty repairs on covered vehicles; Defendant is subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

## PARTIES

5. Plaintiff is an adult individual residing in Farmers Branch, TX 75234.

6. Defendant Ford Motor Company is organized under the laws of Delaware with its principal place of business located at 1 American Road, Dearborn, MI 48126. Defendant is a business corporation qualified to do and regularly conducting business in the State of Texas and is engaged in the manufacture, sale, and distribution of motor vehicles and related equipment and services. Defendant is also in the business of marketing, supplying and selling written warranties to the public at large through a system of authorized dealerships, including Stanley Ford Pilot Point ("Seller").

## FACTUAL ALLEGATIONS

7. On or about December 26, 2017, Plaintiff purchased a new 2017 Ford F250 from Stanley Ford Pilot Point in Pilot Point, Texas bearing the Vehicle Identification Number 1FT7W2BT8HEF12278 (hereinafter the "Vehicle"). A true and accurate copy of the Purchase Agreement is attached as Exhibit "A."

8. The contract price of the vehicle, including registration charges, document fees, sales tax, finance and bank charges totaled more than $79,297.60 *See* Exhibit "A".

9. In consideration for the purchase of said vehicle, Defendant issued to Plaintiff several warranties, guarantees, affirmations or undertakings with respect to the material or workmanship of the vehicle and/or remedial action in the event the vehicle fails to meet the promised specifications.

10. The above-referenced warranties, guarantees, affirmations or undertakings are/were part of the basis of the bargain between Defendant and Plaintiff.

11. The parties' bargain included an express written warranty as well as other guarantees, affirmations and undertakings as stated in Defendant's warranty materials and owner's manual.

12. Defendant engages in both national and global advertising campaigns to sell vehicles, including the Ford F250, to the public through a system of authorized dealers of Defendant, including Seller.

13. Defendant's authorized selling agents, including Seller, are required by Defendant to post Defendant's name and logo on a sign outside of Seller's place of business.

14. Defendant's authorized dealers, including Seller, are required by Defendant to produce to Seller's customers brochures for the sale of Defendant's vehicles that are printed and authored by Defendant.

15. Defendant's authorized selling agents, including Seller, are required by Defendant to enter into a sales and service agreement with Defendant that is reduced to a writing.

16. Defendant requires all authorized selling agents, including Seller, to provide customers, including Plaintiff, with Defendant's written warranty described above at the time of sale.

17. In requiring Seller to provide Defendant's written warranty, Defendant undertakes at the time of sale, the responsibility of repairing its vehicles, including the Ford F250 and makes the accompanying promise to repair in consideration for the sale of the Ford F250.

18. Defendant's authorized selling agents perform warranty repairs on the subject vehicle, necessary to bring Defendant in compliance with its express warranty.

19. Defendant controls the execution of all warranty repairs by its selling agents, as it provides training, materials, special tools, diagnostic software, and replacement parts to its dealers, and demands that the warranty repairs be performed in strict accordance with its repair guidelines and other instructions.

20. During the first 36 months and/or 36,000 miles, Plaintiff complained of defects and non-conformities to the following vehicle components and/or conditions present in the vehicle including violent shaking in the front suspension while traveling, emergency brake issues when engaged, brake pedal making loud popping sounds when depressed , and excessive tire wear.

21. Plaintiff first delivered the Vehicle to one of Defendant's authorized service and repair facilities, Sam Pack's Five Star Ford ("Service Facility"), on January 3, 2019 to remedy these concerns. A true and accurate copy of this Repair Order is attached as Exhibit "B-1."

22. Plaintiff returned to the Service Facility on March 28, 2019 with the following issues: "check engine" light malfuncting, the Vehicle's alighment pulling to the right, the driver's power seat making noise when sliding back, and the emergency brakes popping when depressed. A true and accurate copy of this Repair Order is attached as Exhibit "B-2."

23. On November 13, 2019, Plaintiff again delivered the Vehicle to the Service Facility due to the following issues: the steering wobbling at higher speeds, the parking brake making a loud popping noise when engaged, the lock button on the Driver's front door malfunctioning, and the passenger front seat making a rattle sound when driving down bumpy roads. A true and accurate copy of this Repair Order is attached as Exhibit "B-3."

24. On January 27, 2021, Plaintiff returned to the Service Facility to remedy the following issues: violent shaking when hitting a bump or crack on the road while traveling at speeds above forty-five miles per hour (45 MPH) and brake pedal making a popping noise when

depressed, along with other routine services such as replacing the cabin and engine air filters, tire rotation, and multi-point inspection. A true and accurate copy of this Repair Order is attached as Exhibit "B-4."

25. Plaintiff last delivered the Vehicle to the Service Facility on September 14, 2021 with the same issues concerning the Vehicle's violent shaking when going over bumps and the emergency brake and brake pedal defects. A true and accurate copy of this Repair Order is attached as Exhibit "B-5."

26. When Plaintiff delivered the nonconforming Vehicle to Defendant's authorized service and repair facility, Plaintiff notified Seller of the defects, malfunctions, and nonconformities existent with the Vehicle and demanded that Defendant or its representatives repair, adjust, or replace any necessary parts to conform the Vehicle to the applicable warranties.

27. Defendant represented to Plaintiff that they could and would conform the Vehicle to the applicable warranties; however, Defendant or its representatives failed to conform the Vehicle to the applicable warranties because said defects, malfunctions, and/or nonconformities continue to exist even after a reasonable number of attempts to repair was given and an unreasonable amount time has passed.

28. As a result of the ineffective repair attempts made by Defendant through its authorized agents, the vehicle is rendered substantially impaired and unable to be utilized for its intended purposes.

29. The aforementioned problems have substantially impaired the Vehicle's use, value and safety, and has caused Plaintiff significant hardship.

## FIRST CAUSE OF ACTION
### Breach of Warranty Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*

30. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

31. Plaintiff is a "consumer" as defined in 15 U.S.C. § 2301(3).

32. Defendant is a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4)-(5).

33. The subject vehicle is a "consumer product" as defined in 15 U.S.C. § 2301(6).

34. 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty.

35. 15 U.S.C. § 2304(a)(1) requires Defendant, as a warrantor, to remedy any defect, malfunction or nonconformance of the subject vehicle within a reasonable time and without charge to the Plaintiff.

23. Despite five attempts over a span of approximately ten (10) months, Defendant has failed to remedy the Vehicle's numerous defects within a reasonable time, and/or a reasonable number of attempts, thereby breaching the written warranty applicable to the Vehicle.

24. As a result of Defendant's breach of written warranty, and Defendant's failure to remedy the same within a reasonable time and without charge to Plaintiff, Plaintiff has suffered damages.

## SECOND CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* and Tex. Bus. & Com. Code § 2.314

25. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

26. Defendant is a merchant with respect to motor vehicles.

6

27. The Vehicle was subject to implied warranties of merchantability, as defined in 15 U.S.C. § 2308 and V.T.C.A., Bus. & C. § 2.314, running from the Defendant to the Plaintiff.

28. An implied warranty that the Vehicle was merchantable arose by operation of law as part of the purchase of the Vehicle.

29. Defendant breached the implied warranty of merchantability in that the subject vehicle was not in merchantable condition when the Plaintiff purchased it, or at any time thereafter, and the subject vehicle is unfit for the ordinary purposes for which such vehicles are used.

30. Indeed, the Vehicle suffered from numerous defects involving the steering, excessive shaking, alignment, tire wear, emergency brake, brake pedal, warning lights, door locks, and seats which are significant safety concerns that prevented Plaintiff from being able to properly use the Vehicle.

31. The persistent defects in the emergency brake, brake pedal, tire wear, and excessive shaking are unreasonably dangerous because they can cause the Vehicle to severely malfunction while the Vehicle is in operation at any time, thereby exposing the Vehicle's driver, passengers, and others who share the road with them, to serious risk of accidents and injury or death.

32. Plaintiff notified Defendant of the defects in the Vehicle within a reasonable time after Plaintiff discovered them.

33. As a result of Defendant's breaches of the implied warranty of merchantability, Plaintiff has suffered damages, including but not limited to incidental and consequential damages.

**THIRD CAUSE OF ACTION**
**Breach of Express Warranties**
**Tex. Bus. & Com. Code § 2.313**

34. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

35. In connection with the sale of the Vehicle to the Plaintiff, Defendant provided the Plaintiff with a new vehicle limited warranty, under which it agreed to repair original components found to be defective in material or workmanship under normal use and maintenance, including the brake system and its components.

36. Plaintiff relied on Defendant's warranties when he agreed to purchase or lease the Vehicle and Defendant's warranties were part of the basis of the bargain.

37. Plaintiff submitted his Vehicle for warranty repairs as referenced herein. Defendant failed to comply with the terms of the express written warranty provided to Plaintiff, by failing to repair numerous defects under the Vehicle's warranty as described herein.

38. Plaintiff has given Defendant a reasonable number of opportunities to cure said defects, but Defendant has been unable to do so within a reasonable time.

39. As a result of said nonconformities, Plaintiff cannot reasonably rely on the Vehicle for the ordinary purpose of safe, comfortable, and efficient transportation.

40. Plaintiff could not have reasonably discovered said nonconformities with the Vehicle prior to Plaintiff's acceptance of the Vehicle.

41. Plaintiff would not have purchased the Vehicle, had he known, prior to his time of purchase, that the Vehicle contained the aforementioned defects.

42. As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the express warranties, Plaintiff has suffered actual and consequential damages. Such damages include, but are not limited to, the loss of the use and enjoyment of his Vehicle, and a diminution in the value of the Vehicle containing the defects identified herein.

## **PRAYER FOR RELIEF**

**Wherefore**, Plaintiff, **Koko Katanjian,** respectfully prays for judgment as follows:

    a.    An order approving revocation of acceptance of the subject vehicle;

    b.    For a trial by jury on all issues except the determination of reasonable attorney's fees and costs and the determination of which damages shall be trebled, which are reserved for determination by the Court in the event that Plaintiff prevails at a trial on the merits;

    c.    The "full purchase price" of the vehicle, collateral charges, finance charges, incidental and consequential damages under all Counts above;

    d.    Incidental and consequential damages;

    e.    Costs, including expert witness fees and reasonable attorney's fees;

    f.    Any other relief this Honorable Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

**Please take notice** that Plaintiff, **Koko Katanjian** demands a jury trial in this case.

Respectfully submitted,

Dated: January 19, 2022

By: *s/ Craig Thor Kimmel*
Craig Thor Kimmel, Esq.
Kimmel & Silverman, P.C.
30 East Butler Pike
Ambler, PA 19002
Phone: 215-540-8888
Facsimile: 877-788-2864
Email: teamkimmel@creditlaw.com